IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NEW JERSEY SCHOOLS INSURANCE GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>MEADOWBROOK INSURANCE GROUP, et al.,<br><br>    Defendants. | Civil Action No. 16-1199 (RMB/KMW)<br><br>**OPINION** |

<u>Appearances</u>:

Gregory J. Giordano, Esq.
Lenox, Socey, Wilgus, Formidoni,
Brown, Giordano & Casey, LLC
136 Franklin Corner Road, Bldg B2
Trenton, New Jersey 08648
    *Attorney for Plaintiff New Jersey*
    *Schools Insurance Group*

Michael P. Luongo, Esq.
Goldberg Segalla LLP
1700 Market St.
Suite 1418
Philadelphia, Pennsylvania 19103
    *Attorney for Defendants Brokers Risk*
    *Insurance Company, Lloyds of London,*
    *Certain Underwriter at Lloyds, London*

**BUMB**, United States District Judge:

This matter is before the Court upon a motion by Defendant Certain Underwriters at Lloyds, London ("Underwriters") to

1

dismiss Counts II and V of the Second Amended Complaint filed by Plaintiff New Jersey Schools Insurance Group ("NJSIG").  For the reasons set forth herein, the motion will be granted.

The following facts are taken from the Second Amended Complaint.  (Compl. [ECF No. 26]).  On June 1, 2011, Luis Rodriguez was struck by a school bus owned and operated by Jersey City Public Schools ("Jersey City"), resulting in personal injuries to Mr. Rodriguez.  Mr. Rodriguez filed a personal injury action against Jersey City in the New Jersey Superior Court, Law Division, Union County (the "Rodriguez Action").

Jersey City was insured by Plaintiff NJSIG for the claims in the Rodriguez Action under a policy with a coverage limit of $500,000.  Munich Insurance Company provided indemnity coverage for an additional $500,000.  Defendant Star Insurance Company insured Jersey City under an Excess Liability policy with coverage in excess of the $1 million provided by NJSIG and Munich Insurance Company.  Underwriters insured NJSIG under a Trustees Errors and Omissions Liability Insurance for Self Insured Funds policy bearing number LTEO-0006976 (the "Policy").

The Rodriguez Action settled at mediation on July 21, 2004.  The settlement resulted in a General Release in which all claims by Mr. Rodriguez against Jersey City, NJSIG, and others were released in exchange for the settlement payment of $1.9 million.

On September 29, 2014, over two months after the settlement, NJSIG notified Star and Meadowbrook of the settlement and requested payment of $900,000 under the Star policy.[1] On October 24, 2014, Meadowbrook denied coverage under the Star policy on the basis that it did not receive notice that the claim against Jersey City would exceed the $1 million attachment point of the Star policy and that it had not provided consent to the settlement within its policy limits. Prior to receiving Meadowbrook's denial, however, (and "[w]ithout waiving the position that Star was notified that the claim exceeded $1 million), (Compl. ¶ 28), NJSIG notified Underwriters on October 7, 2014, through its representative, Brokers' Risk Placement Service, Inc. ("Brokers' Risk"), of a claim under the Policy. NJSIG alleges that its notice to Underwriters made clear that NJSIG had committed an error by failing to notify Star of the settlement and that the settlement payment needed to be issued. Moreover, NJSIG alleges that it was under threat of litigation by Rodriguez to enforce the settlement if payment of the settlement amount was not forthcoming.

---

[1] In its complaint, Plaintiff NJSIG alleges that it had previously notified Meadowbrook/Star on March 5, 2013, "that the potential claim value or 'reserve' triggered coverage on their policy," but that the notice was classified as "incident only." (Compl. ¶¶ 11-12.)

On November 7, 2014, Brokers' Risk, on Underwriters' behalf, denied coverage to NJSIG under the Policy. In pertinent part, Underwriters denied coverage because no claim had been made against NJSIG as required under the Policy. Plaintiff alleges the denial was "based on a narrowly circumscribed and distorted interpretation of 'claim' that purportedly required litigation against NJSIG in order to trigger coverage under the . . . Policy." (Compl. ¶ 33). NJSIG also alleges that the denial was made without conducting any investigation and that Brokers' Risk/Underwriters had no debatable reason to deny coverage under the Policy.

Underwriters contends that Counts II and V fail to state a claim because Underwriters had a legally permissible basis to deny coverage to NJSIG or, at a minimum, Underwriters' denial of coverage was debatable. See, e.g., Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 554 (2015) ("[T]o establish a first-party bad faith claim for denial of benefits in New Jersey, a plaintiff must show that no debatable reasons existed for denial of the benefits." (internal citations omitted)). The Court agrees.

**MOTION TO DISMISS**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied if the plaintiff's factual allegations are "enough to raise a right to

4

relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)(internal citations omitted). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (internal citations omitted).

A district court must accept any and all reasonable inferences derived from those facts. Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991); Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990). Further, the court must view all allegations in the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the non-movant, the plaintiff has

5

alleged "enough facts to state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

Count II alleges a breach of the implied covenant of good faith and fair dealing. Specifically, NJSIG alleges that Underwriters "breached the duty of good faith and fair dealing in its determination as to the liabilities due to NJSIG under [the Policy]." Count V alleges bad faith. Specifically, Plaintiff alleges that Underwriters "lacked any reasonable basis for denying coverage and/or knew or recklessly disregarded the lack of a reasonable basis for denying the claim."[2]

Although this is a motion to dismiss and not a motion for summary judgment, the Court is permitted to rely upon facts if they are contained in documents that are integral to the Complaint. In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that district courts may consider a document integral to or explicitly relied upon in the

---

[2] Although Plaintiff alleges bad faith denial of benefits and breach of the implied covenant of good faith and fair dealing as separate causes of action, it is unclear that each count stands on its own. Because the pleadings do not support Plaintiff's allegations of bad faith for either cause of action, the Court need not delve into such discussion.

6

complaint without converting a motion to dismiss into a motion for summary judgment). Here, in response to NJSIG's claim for coverage, Underwriters sent a denial letter explaining that coverage was not triggered under the Policy because no third-party "Claim," as that term is defined in the Policy had been made against NJSIG. The Policy's insuring agreement provides, in pertinent part:

> For a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company during the POLICY PERIOD and alleging a WRONGFUL ACT first committed or allegedly committed on or subsequent to the RETROACTIVE DATE:
>
> A. The Company will pay on behalf of an INSURED any LOSS which the INSURED shall become legally obligated to pay,
>
> B. The company will pay on behalf of an INSURED any CLAIMS EXPENSE incurred in defense of any CLAIM defended by the Company in connection with a LOSS covered under this Policy.

(Pl.'s Opp. Br. Ex B at 23 [ECF No. 34-1].) Likewise, the Policy contains a notice of claim provision:

> THE INSURED [NJSIG] shall, as a condition precedent to any right to coverage under this Policy, give to the Company notice in writing as soon as practicable, during the POLICY PERIOD, or within sixty (60) days after the end of the POLICY PERIOD:
>
> (a) of any CLAIM first made against the INSURED during the POLICY PEROD;
>
> (b) of any circumstances which may subsequently give rise to a CLAIM for which coverage is provided hereunder. If any CLAIM for which coverage is provided hereunder is subsequently made against the INSURED arising out of the circumstances reported

7

under this subdivision 5.(b), it shall be deemed to
have been made during the POLICY PERIOD.

(Id. at 41 [ECF No. 34-1].)

Most importantly, "Claim" is defined under the Policy:

CLAIM – shall mean a written demand upon one or more
INSURED(S) for LOSS and alleging a WRONGFUL ACT.

(Id. at 40.)

Clearly, on the face of the Policy, the unambiguous definition of "Claim" requires that a written demand be made against the insured. NJSIG, however, has not alleged anywhere in the Second Amended Complaint that any third party made a demand, written or otherwise, against NJSIG based on the events of the settlement of the Rodriguez Action. Nor does NJSIG allege anywhere in the Second Amended Complaint that it advised Underwriters that it was under "threat of litigation" by Rodriguez. As Underwriters' letter makes clear, Underwriters expressly asked NJSIG to keep it advised as the matter developed. NJSIG does not allege that it ever provided such notice.[3]

---

[3] In the event discovery shows that NJSIG did provide such notice to Underwriters, NJSIG may seek leave to amend the Complaint. On the face of the pleadings, however, NJSIG makes no such claim.

Accordingly, based on the pleadings, it cannot be said that Underwriters' denial of coverage was not fairly debatable. Accordingly, Counts II and V will be dismissed.

s/Renée Marie Bumb  
RENÉE MARIE BUMB  
UNITED STATES DISTRICT JUDGE

Dated: May 11, 2017